IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AEL FINANCIAL LLC, an Illinois limited liability company )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>J R RICHARD ENTERPRISES, INC., a Texas )<br>corporation, and JOSEPH R. RICHARD, an )<br>individual )<br>)<br>Defendants. )<br>_____/ | **CASE NO.:**<br>    FILED: APRIL 3, 2008<br>    08CV1907    AEE<br>**JUDGE:**<br>    JUDGE SHADUR<br>    MAGISTRATE JUDGE MASON<br>**MAGISTRATE JUDGE:**<br><br>**COMPLAINT** |

NOW COMES the Plaintiff, AEL FINANCIAL, LLC, an Illinois limited liability company, (hereinafter referred to as "AEL"), by and through its attorneys, BRIAN IRA TANENBAUM and JOHN A. BENSON, JR., of The Law Offices of Brian Ira Tanenbaum, Ltd., and as for its Complaint against Defendants, J R RICHARD ENTERPRISES, INC., a Texas Corporation (hereinafter also referred to as "Defendant Lessee") and JOSEPH R. RICHARD, an individual (hereinafter also referred to as the "Guarantor"), states as follows:

**I.    JURISDICTION AND VENUE**

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and that the matter in controversy exceeds, exclusive of interests, costs and attorneys' fees, the sum or value of Seventy Five Thousand Dollars ($75,000.00).

2.    This Court has personal jurisdiction over the Defendants pursuant to Illinois' long-arm statute, Ill. Rev. Stat. ch. 110, para. 2-209 ("Section 209") in that each Defendant, J R

RICHARD ENTERPRISES, INC. and JOSEPH R. RICHARD, made or performed a contract or promise substantially connected with Illinois and thereby transacted business in Illinois by invoking the benefits and protections of Illinois law in the contractual relationship, as the contracts (and guaranty) executed by them are governed by Illinois law.

3. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(a).

## II.   THE PARTIES

4. AEL is an Illinois limited liability company with its principal place of business located at 600 North Buffalo Grove Road, Buffalo Grove, Illinois, 60089. AEL is engaged primarily in the business of leasing certain industrial and commercial equipment to various businesses.

5. Upon information and belief, J R Richard is a Texas corporation with a principal office located at 1701 Highway 6 South, Houston, Texas 77077-2803.

6. Upon information and belief, Guarantor is a resident of the state of Texas.

## III.   GENERAL ALLEGATIONS

7. On or about June 18, 2007, AEL, "Lessor", entered into a certain Business Communications Lease Agreement (hereinafter "Equipment Lease") with J R Richard, "Defendant Lessee", pursuant to which Defendant Lessee leased certain equipment ("Equipment") more fully described in the Equipment Lease.

8. On July 12, 2007, Defendant Lessee accepted the Equipment and signed a Delivery and Acceptance Receipt acknowledging the same. A copy of the Equipment Lease and the Delivery and Acceptance Receipt are incorporated by reference herein and are attached hereto and marked as Exhibit A.

9. Pursuant to the terms of the Equipment Lease, Defendant Lessee was obligated, among other things, to make monthly installments in an amount equal to One Thousand Seven Hundred Twenty-Five Dollars ($1,725.00) to AEL for the sixty (60) month period immediately following the commencement of Defendant Lessee's obligation to make lease payments under the Equipment Lease.  Pursuant to the terms and conditions of the Equipment Lease, Defendant Lessee agreed that it could not terminate or cancel the Equipment Lease under any circumstance. Thus, Lessee has an <u>unconditional obligation to make all payments due under the Equipment Lease</u>.  <u>See</u> Exhibit A--Terms and Conditions of the Equipment Lease.

10. Contemporaneously with the execution by AEL and Lessee of the Equipment Lease and in connection therewith, the Guarantor executed a certain "Guaranty". <u>See</u> Exhibit A. Pursuant to the Guaranty, the Guarantor guaranteed Defendant Lessee's performance of its obligations for the full term of the Equipment Lease.  The Guaranty is a guaranty of payment and not of collection.

11. AEL has performed its duties and obligations with respect to the Equipment Lease, the Guaranty and any other ancillary documents.

## IV.    CAUSES OF ACTION

### Count I – Breach of Contract

12. AEL repeats and reiterates each and every allegation contained in Paragraphs 1 through 11, inclusive, and adopts the same as though fully set forth herein.

13. The Equipment Lease between AEL and Defendant Lessee is a valid and enforceable contract.

14. Upon information and belief, Joseph R. Richard is President of Defendant Lessee and was authorized and empowered to execute the Equipment Lease and all documents related

thereto between AEL and Defendant Lessee.  In support thereof, a copy of Defendant Lessee's Secretary Certificate is incorporated by reference herein and is attached hereto and marked as Exhibit B.

15. Defendant Lessee breached the Equipment Lease by failing to make the required monthly installment payments to AEL since approximately November 2007.  Therefore, and as a result of said defaults, pursuant to the terms of the Equipment Lease, fifty-seven (57) monthly lease payments remain due and owing AEL.

16. AEL has performed its duties and obligations under the Equipment Lease.

17. As a result of Defendant Lessee's conduct as alleged herein, AEL has suffered significant damages by the loss of use of monies AEL paid for the Equipment.

18. AEL has notified Defendant Lessee of its failure to perform under the terms and conditions of the Equipment Lease and has made demand upon Defendant Lessee to perform as required under the Equipment Lease.

19. That pursuant to the Equipment Lease, AEL is entitled to and has accelerated all rental sums for the remainder of the term of the Equipment Lease, and AEL is entitled to additional late charges and attorneys' fees accruing up to and incurred subsequent to April 1, 2008.  Upon acceleration, the sum for the remainder of the term of the Equipment Lease (discounted at four percent (4%) upon default, as required under the Equipment Lease) is Eighty-Nine Thousand Four Hundred Thirteen Dollars ($89,413.00).

**WHEREFORE,** AEL FINANCIAL LLC, an Illinois limited liability company, demands judgment against J R RICHARD ENTERPRISES, INC., a Texas Corporation, as follows:

1. To recover all losses suffered by AEL, including actual, compensatory and consequential damages and lost profits;

2. Additional damages, as provided by law;

3. Attorneys' fees, costs and disbursements, as provided under the Equipment Lease by law; and

4. Such other and further relief as this Court may deem just and proper.

### Count II – Breach of Guaranty

20. AEL repeats and reiterates each and every allegation contained in Paragraphs 1 through 19, inclusive, and adopts the same as though fully set forth herein.

21. AEL would not have entered into the Equipment Lease without the Guaranty of the Guarantor with respect to Defendant Lessee's obligations under the Equipment Lease.

22. As President of Defendant Lessee, Guarantor benefited from the Equipment Lease and the ability of Lessee to use the Equipment.

23. Pursuant to the Guaranty, the Guarantor is liable for the full satisfaction of Defendant Lessee's obligations under the Equipment Lease.

24. Defendant Lessee has failed to make any monthly payment as required under the Equipment Lease since approximately November 2007, and, as a result, as of April 1, 2008, AEL is owed the accelerated sum of Eighty-Nine Thousand Four Hundred Thirteen Dollars ($89,413.00) (discounted at four percent (4%) upon default, as required under the Equipment Lease).

25. AEL has notified Guarantor of Defendant Lessee's failure to perform as required under the terms and conditions of the Equipment Lease.

**WHEREFORE,** AEL FINANCIAL LLC, an Illinois limited liability company, demands judgment against JOSEPH R. RICHARD, an individual, as follows:

1.   To recover all losses suffered by AEL, including actual, compensatory and consequential damages and lost profits;

2.   Additional damages, as provided by law;

3.   Attorneys' fees, costs and disbursements, as provided under the Equipment Lease and Guaranty and by law; and

4.   Such other and further relief as this Court may deem just and proper.


Dated: April 3, 2008                     Respectfully submitted,

                                         AEL FINANCIAL, an Illinois limited liability
                                         company



                                         By: /s/ John A. Benson, Jr._____
                                                 One of its Attorneys


Brian Ira Tanenbaum, Esq. (IL Bar No. 6181447)
John A. Benson, Jr., Esq. (IL Bar No. 6289042)
Attorneys for Plaintiff
The Law Offices of Brian Ira Tanenbaum, Ltd.
2970 Maria Avenue Suite 207
Northbrook, Illinois 60062
Telephone: 847-562-1636
Facsimile: 847-562-1637

# EXHIBIT A

Business Communications Lease Agreement No.

TO OUR VALUED CUSTOMER: This Lease Agreement ("Agreement") has been written in "Plain English": When we use the words you and your in this Agreement, we mean you, our customer, the Lessee; which is the Customer indicated below. When we use the words we, us, and our in this Agreement, we mean the Lessor, AEL Financial, LLC. Our address is 600 North Buffalo Grove Road, Buffalo Grove, IL 60190. Our phone number is 847-465-2009.

**AEL FINANCIAL**

| | |
|---|---|
| Legal Business Name: J R Richard Enterprises Inc | Tax ID Number: |
| Billing Address: 1701 Highway 6 South | |
| City/State/County/Zip: Houston, TX 77077-2803 | |

| | |
|---|---|
| Contact Name: Joseph R Richard | Supplier: Capital 4, Inc. |
| Phone: 713-777-7665  Fax:   E-mail: | Supplier Contact/Phone: |

Equipment Location (if different from above):

| Qty. | Equipment Description (See attached Exhibit "A" if necessary) | Serial Numbers |
|---|---|---|
| | As per Exhibit "A"-one page attached hereto and made a part hereof | |

| Initial Term | Payment Schedule | Payment Schedule Amount Payable Each Payment Period (including Equipment finance charges and charges for services) |
|---|---|---|
| 60 (months) | Monthly | $1,593.53 Equipment Payment + Rental Payment | $131.47 Applicable Sales Tax + | $161.66 P.O.Z. Maintenance Payment + (For benefit of Capital 4, Inc.) | $13.34 Applicable Sales Tax = | $1,900.00 Total |

**End of Term Purchase Option**

(check one applicable box. If no box is checked or if more than one box is checked, the Fair Market Value Purchase Option will apply).
[ ] Fair Market Value, plus applicable taxes
[ ] Fair Market Value or ___% of the Total Cash Price, plus applicable taxes
[X] $1.00 Option, plus applicable taxes

**Insurance and Taxes**

You are required to provide and maintain insurance related to the Equipment, and to pay any property, use and other taxes related to this Agreement or the Equipment. (See Sections 6 and 8 on the back of this Agreement). If you are tax-exempt, you must furnish us with satisfactory evidence of your exemption. If you do not provide us with your evidence of insurance coverage you authorize us to provide insurance coverage for you and bill you for the insurance premium.

**Lease Term and Lease Commencement Date:**

The Term of this Lease shall consist of an interim term, ("Interim Term"), an initial term, ("Initial Term") and a renewal term, ("Renewal Term"), collectively, the "Lease Term". The Initial Term shall commence when we execute this Lease, following your acceptance of the Equipment and execution by all parties of the PreFunding Confirmation letter, (the "Lease Commencement Date") (see Section 4 herein). The Initial Term shall commence on the first day of Lessor's applicable billing cycle as designated by us.

**Initial Payment:**

You agree to pay at the time of your signing this Agreement:
A. Advance Payment = $1,900.00
   (exclusive of applicable taxes)
B. One Time Documentation Fee = $ 100.00
C. Total of A & B = $2,000.00

Advance Payments are applied first to Interim Rent, (if any), on a prorata basis and then to Initial Rent. Interim Rent is defined as rent due from the Lease Commencement Date to the date of the first Rental Payment under the Initial Term.

**Terms and Conditions:**

BY SIGNING THIS AGREEMENT: (I) YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS ON THE FRONT AND BACK OF THIS AGREEMENT, INCLUDING CERTAIN SUPPORTING DOCUMENTS, SUCH AS, THE DELIVERY AND ACCEPTANCE CERTIFICATE, THE PREFUNDING CONFIRMATION LETTER, AND OTHER DOCUMENTS WHICH ARE A PART OF THIS AGREEMENT; (II) YOU AGREE THAT YOU CANNOT TERMINATE OR CANCEL THIS AGREEMENT UNDER ANY CIRCUMSTANCES. YOU HAVE AN UNCONDITIONAL OBLIGATION TO MAKE ALL PAYMENTS DUE UNDER THIS AGREEMENT, AND YOU CANNOT WITHHOLD, SET OFF OR REDUCE SUCH PAYMENTS FOR ANY REASON (III) YOU WILL USE THE EQUIPMENT ONLY FOR BUSINESS PURPOSES (IV) YOU WARRANT THAT THE PERSON SIGNING THIS AGREEMENT FOR YOU HAVE THE AUTHORITY TO DO SO AND TO GRANT THE POWER OF ATTORNEY SET FORTH IN SECTION 9 OF THIS AGREEMENT (V) YOU CONFIRM THAT YOU DECIDED TO ENTER INTO THIS AGREEMENT RATHER THAN PURCHASE THE EQUIPMENT FOR ITS TOTAL CASH PRICE AND (VI) YOU AGREE THAT THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND YOU CONSENT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN COOK COUNTY, ILLINOIS. YOU AND WE EXPRESSLY WAIVE ANY RIGHTS TO A TRIAL BY JURY.

| | |
|---|---|
| Lessee: J R Richard Enterprises, Inc. | AEL Financial, LLC Use Only |
| Signature: [signed]  Date: June 18, 2007 | Agreed and Accepted By: AEL Financial, LLC |
| Print Name and Title: Joseph R. Richard/ President | Signature: [signed]  Date: 8/1/07 |
| | Print Name and Title: [illegible] |

## Terms and Conditions

1. **LEASE AGREEMENT; DELIVERY AND ACCEPTANCE.** You agree to lease the equipment, including, without limitation, the hardware and software described on the front of this lease agreement (collectively, "Equipment") on the terms and conditions shown on the front and back of this Agreement. If you have entered into any purchase or supply contract ("Supply Contract") with any Supplier, by signing this Agreement, you assign to us your rights under such Supply Contract, but none of your obligations (other than the obligation to pay for the Equipment if it is accepted by you as stated below and your timely delivery to us of such documents and assurances as we request). If you have not entered into a Supply Contract, you authorize us to enter into a Supply Contract on your behalf. You will arrange for the delivery of the Equipment to you. When you receive the Equipment, you agree to inspect it to determine if it is in good working order. This Agreement will begin on the Lease Commencement Date (which is the date that we sign this Agreement). Other than an advance Rental Payment, the Rental Payments will begin thirty (30) days following the Lease Commencement Date and shall continue thereafter to be paid on the same day of each subsequent month or other calendar period and for the time period specified on the front of this Agreement. You will make all payments required under this Agreement to us at such address as we may specify in writing. You authorize us to adjust the Rental Payment by not more than fifteen percent (15%) if the actual Total Cash Price (which is all amounts we have paid in connection with the purchase, delivery and installation of the Equipment, including any trade-up and buyout amounts and Cash Rebate Option received, if any) differs from the estimated Total Cash Price. If any Rental Payment or other amount payable to us is not paid within ten (10) days of its due date, you will pay us a late charge not to exceed ten percent (10%) of each late payment (or such lesser rate as is the maximum rate allowable under applicable law).

2. **PASS THROUGH PAYMENTS.** This Agreement may provide for the collection by us of payments by you ("Pass Through Payments") for goods and/or services not constituting "Equipment" provided to you by the Supplier noted above (or its designated agent), ("Supplier") pursuant to a Supply Contract between you and Supplier. Amounts owed to us for the lease of the Equipment, including applicable taxes ("Equipment Portion") may be combined with the Pass Through Payments for administrative convenience, but your obligations with respect to the Pass Through Payments shall be governed solely by the Supply Contract. We may terminate our receipt of the Pass Through Payments at any time upon written notice to you and thereafter you shall pay the Pass Through Payment to the Supplier directly pursuant to the terms of the Supply Contract. You agree and understand that your obligations with respect to the Equipment Portion shall be governed solely by this Agreement. All amounts received from you under this Agreement shall be applied first to the Equipment Portion and then to any other amounts due under this Agreement as we determine in our sole discretion. The term "Rental Payments" as defined herein shall be deemed to refer only to the Equipment Portion amount payable each payment period.

3. **NO WARRANTIES.** WE ARE LEASING THE EQUIPMENT TO YOU, "AS IS." YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE THE EQUIPMENT. WE DO NOT REPRESENT THE MANUFACTURER OR THE SUPPLIER, AND YOU HAVE SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON YOUR OWN JUDGMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. YOU AGREE THAT REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR ANY DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, SPECIAL, OR INDIRECT. YOU AGREE THAT NEITHER SUPPLIER NOR ANY SALESPERSON, EMPLOYEE, OR AGENT OF SUPPLIER IS OUR AGENT OR HAS ANY AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY WAY. WE TRANSFER TO YOU, FOR THE TERM OF THIS AGREEMENT, ANY WARRANTIES MADE BY THE MANUFACTURER OR SUPPLIER UNDER A SUPPLY CONTRACT. THIS AGREEMENT IS IRREVOCABLE FOR THE FULL LEASE TERM. YOUR OBLIGATION TO PAY ALL AMOUNTS PAYABLE BY YOU UNDER THIS AGREEMENT, EXCEPT FOR THE PASS THROUGH PAYMENT, IF ANY, IS ABSOLUTE AND UNCONDITIONAL AND WILL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SETOFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT FOR ANY REASON WHATSOEVER, INCLUDING ANY DEFECT IN THE EQUIPMENT OR IN THE GOODS AND SERVICES TO BE PROVIDED UNDER THE SUPPLY CONTRACT.

4. **PAYMENT.** This Agreement goes into effect on the Lease Commencement Date. We shall have no liability under this Agreement whatsoever until such acceptance and the satisfaction in our sole discretion of all conditions we may specify. You agree to pay us the Equipment Portion of periodic rent payments (each a "Rental Payment") shown above for each month or other designated time period during the Lease Term and all other amounts that become due from time to time under this Agreement, other than the Pass Through Payment. The amount of each Rental Payment is based on the total estimated cost of the Equipment you have provided to us and if the final cost of the Equipment we pay the Supplier is higher or lower than that estimate, we will adjust the amount of each Rental Payment proportionately higher or lower than the Rental Payment amount set forth above. The final Equipment cost we pay the Supplier shall be set forth on a document submitted by us to you which you must sign, entitled PreFunding Confirmation of Terms Letter ("PreFunding Confirmation") prior to our paying the Supplier at your direction. The PreFunding Confirmation shall become part of this Agreement and takes precedence over any inconsistent provision set forth herein and you hereby authorize us to attach the Pre Funding Confirmation to this Agreement. Other than a Rental Payment payable as part of an Advance Payment, the first Rental Payment shall be due and payable on the date specified in our first invoice therefore ("First Payment Date"), to wit: thirty (30) days after the Lease Commencement Date, and all subsequent Payments are due on the same date of each subsequent month or other designated time period during the Lease Term regardless of whether you receive an invoice for such Rental Payment.

5. **EQUIPMENT LOCATION; USE AND REPAIR; RETURN.** You will keep and use the Equipment only at the Equipment Location shown on the front of this Agreement. You may not move the Equipment without our prior written consent. At your own cost and expense,

replacements to the Equipment without our prior written consent. All alterations, additions and replacements will become part of the Equipment and our property at no cost or expense to us. We may inspect the Equipment at any reasonable time. Unless you purchase the Equipment in accordance with this Agreement, at the end of this Agreement you will immediately deliver the Equipment to us in as good condition as when you received it, except for ordinary wear and tear, to any place in the United States that we tell you. All Equipment returned to us must be eligible, without any additional cost to us, for any manufacturer's certification and maintenance, or, at our option, you will pay us an inspection and refurbishment fee equal to ten (10%) of the Total Cash Price. You will pay all expenses of uninstalling, crating and shipping, and you will insure the Equipment for its full replacement value during shipping.

6. **TAXES AND FEES.** You will pay when due, either directly, or to us upon our demand, all taxes, fines and penalties relating to this Agreement (apart from any incurred solely by reason of the Pass Through Payment, if any) or the Equipment that are now or in the future assessed or levied by any state, local or other government authority. For Equipment subject to personal property taxes, to liquidate such taxes, you agree to pay us an annual amount ("Assessed Amount") which shall be based upon the Equipment price (as set forth in the original Supplier Invoice), reduced by depreciation calculated in accordance with applicable depreciation schedules used by the applicable taxing jurisdiction at the applicable tax rate. The Assessed Amount shall be payable by you without regard to any discounts or reduction we may obtain by reason of early payment or otherwise. We will file all personal property, use or other tax returns (unless we direct you otherwise in writing). You will pay a processing fee equal to ten percent (10%) of any assessed personal property tax. We have no obligation to contest any taxes, liens or penalties. You will pay estimated property taxes with each Rental Payment or annually, as invoiced.

7. **LOSS OR DAMAGE.** As between you and us, you are responsible for any loss, theft or destruction of, or damage to the Equipment (collectively, "Loss") from any cause at all, whether or not insured, until it is delivered to us at the end of this Agreement. You are required to make all Rental Payments even if there is a Loss. You must notify us in writing immediately of any Loss. Then, at our option, you will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, or (b) pay us the amounts specified in Section 11 below.

8. **INSURANCE.** You will provide and maintain at your expense (a) property insurance against the loss, theft or destruction of, or damage to, the Equipment for its full replacement value naming us as loss payee, and (b) public liability and third party property insurance, naming us as an additional insured. You will give us certificates or other evidence of such insurance when requested. Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given thirty (30) days advance notice of any cancellation or material change of such insurance. If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to have either property insurance or liability insurance, or both protecting us placed at your expense. Your expense may include the full premium paid by us (not reduced by any credit or refund due or paid to us) and any customary charges or fees of ours and of our designee(s) associated with such insurance. You agree to pay such amounts in equal installments allocated to each Rental Payment plus interest on such amounts at the lesser of the highest rate permitted by law or one and one half percent (1.5%) per month. If insurance is placed by us, you will cooperate with our insurance agent with respect to the placement of insurance and the processing claims. Nothing in this Agreement will create an insurance relationship of any type between us and any other person. You acknowledge that we are not required to secure or maintain any insurance, and we will not be liable to you if we terminate any insurance coverage that we arrange. If we replace or renew any insurance coverage, we are not obligated to provide replacement or renewal coverage under the same terms, costs, limits, or conditions as the previous coverage. You hereby appoint us as your attorney-in-fact to make claims for, receive payment of, and execute and endorse all documents, checks or drafts for loss or damage under any of your insurance policies.

9. **TITLE; RECORDING.** We are the owner of and will hold title to the Equipment, except to the extent the Equipment is licensed software in which event you shall maintain a perpetual right to use and possess such software and shall abandon such perpetual right at the end of this Agreement unless you purchase the Equipment in accordance with this Agreement. If any other person attempts to claim ownership of the Equipment by asserting that claim against you or through you, you agree, at your expense, to protect and defend our title to the Equipment. You will keep the Equipment free of all liens and encumbrances and you shall give us immediate notice if any legal process or lien is asserted or made against the Equipment. If this transaction is deemed to be a lease intended for security, then you grant us a security interest in the Equipment. You will deliver to us signed financing statements or other documents we request to protect our interests under this Agreement. YOU AUTHORIZE US TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINT US OR OUR DESIGNEE, AS YOUR ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON YOUR BEHALF, FINANCING STATEMENTS PROTECTING OUR INTERESTS UNDER THIS AGREEMENT AND IN THE EQUIPMENT AND ANY COLLATERAL PROVIDED BY YOU HEREUNDER.

10. **DEFAULT.** Each of the following is a "Default" under this Agreement: (a) you fail to pay any Rental Payment or any other within ten (10) days of its due date (other than the Pass Through Payment, if any), (b) you do not perform any of your other obligations under this Agreement or in any other agreement with us and this failure continues for ten (10) days after we have notified you of it, (c) you become insolvent, you dissolve or are dissolved, or you assign your assets for the benefit of your creditors, or enter (voluntarily or involuntarily) any bankruptcy or reorganization proceeding, (d) any guarantor of this Agreement dies, does not perform its obligations under the guaranty or becomes subject to one of the events listed in clause (c) above.

11. **REMEDIES.** If a default occurs, we may do one or more of the following: (a) we may cancel or terminate this Agreement or any or all other agreements that we have entered into with you; (b) we may require you to immediately pay us as compensation for loss of our

interest in the Equipment each discounted at four percent (4%) per year, compounded monthly, plus (ii) all other amounts due or that become due under this Agreement (other than the Pass Through Payment, if any), (c) we may require you to deliver the Equipment to us as set forth in Section 5; (d) we or our agent may peacefully repossess the Equipment without court order and you will not make any claims against us for damages or trespass or any other reason and (e) we may exercise any other right or remedy available at law or in equity. You agree to pay all of our costs of enforcing our rights against you, including reasonable attorneys' fees. If we take possession of the Equipment, we may sell or otherwise dispose of it with or without notice, at a public or private sale and apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Equipment) to the amounts that you owe us. You agree that if notice of sale is required by law to be given, ten (10) days notice shall constitute reasonable notice. You will remain responsible for any amounts that are due after we have applied such net proceeds.

12. FINANCE AGREEMENT STATUS. You agree that this agreement will be considered a "Finance Lease" as defined in Article 2A (Sections 508-522) of the Uniform Commercial Code. By signing this Agreement, you agree that either (a) you have reviewed, approved, and received a copy of the Supply Contract or (b) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the Supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

13. ASSIGNMENT. YOU MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR YOUR INTEREST IN THIS AGREEMENT. We may, without notifying you, sell, assign, or transfer this Agreement and our rights in the Equipment. You agree that the new holder will have the same rights and benefits that we have now under this Agreement but not our obligations. The rights of the new holder will not be subject to any claim, defense or set off that you may have against us.

14. PURCHASE OPTION; AUTOMATIC RENEWAL. If no Default exists under this Agreement, you will have the option at the end of the Lease Term to purchase all (but not less than all) of our interest in the Equipment at the Purchase Option price shown on the front of this Agreement, plus applicable taxes. You must give us at least sixty (60) days, but not more than ninety (90) days, written notice before the end of the original term that you will purchase the Equipment or that you will deliver the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Agreement, this Agreement will automatically renew for an additional twelve (12) month term and thereafter renew for successive one month terms until you deliver the Equipment to us. During such renewal(s) the Rental Payment will remain the same. We may cancel an automotive renewal term by sending you written notice ten (10) days prior to such renewal term. We will use our reasonable judgment to determine the Equipment's fair market value. If you do not agree with our determination of the Equipment's fair market value, the fair market value (on a rental basis) will be determined at your expense by an independent appraiser selected by us. Upon payment of the Purchase Option price, we shall transfer our interest in the Equipment to you "AS IS, WHERE IS" without any representation or warranty whatsoever.

15. INDEMNIFICATION. You are responsible for any losses, damages, penalties, claims, suits and actions (collectively, "Claims"), whether based on a theory of strict liability or otherwise caused by or related to (a) the manufacture, installation, ownership, use, rental, possession, or delivery, of the Equipment or (b) any defects in the Equipment. You agree to reimburse us for and if we request, to defend us against any Claims.

16. ADDITIONAL SECURITY. In any jurisdiction where the Uniform Commercial Code is in effect, you grant to us a security interest in all the property you own, including any goods, chattels, fixtures, furniture, equipment, assets, accounts receivable, contract rights and general intangibles, wherever located as well as any related proceeds. Any security interest created by this agreement secures your obligations and obligations of any of your affiliates (whether they exist now or later) to us.

17. SEVERABILITY. Any provisions hereof prohibited by or unenforceable under any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provisions of this Agreement; provided, however, that to the extent that any provisions of any such applicable law may be waived, they are hereby waived by us to the full extent permitted by law to the end that this Agreement shall be deemed to be valid, binding and enforceable in accordance with its terms.

18. CREDIT INFORMATION. YOU AUTHORIZE US TO OBTAIN CREDIT BUREAU REPORTS, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE NECESSARY. ON YOUR WRITTEN REQUEST, WE WILL INFORM YOU WHETHER WE HAVE REQUESTED A CONSUMER CREDIT REPORT AND THE NAME AND ADDRESS OF ANY CONSUMER CREDIT REPORTING AGENCY THAT FURNISHED A REPORT. YOU ACKNOWLEDGE THAT WITHOUT FURTHER NOTICE WE MAY USE OR REQUEST ADDITIONAL CREDIT BUREAU REPORTS TO UPDATE OUR INFORMATION. YOU HEREBY AGREE TO FURNISH US, UPON REQUEST, WITH COPIES OF ANNUAL OR QUARTERLY FINANCIAL STATEMENTS INCLUDING COPY OF YOUR BALANCE SHEET AND PROFIT AND LOSS STATEMENT.

19. MISCELLANEOUS. You agree that the terms and conditions in this Agreement make up the entire agreement between you and us regarding the rental of the Equipment. This Agreement is not binding on us until we sign it. Any change in any of the terms and conditions of this Agreement must be in writing and signed by us. You agree, however, that we are authorized, without notice to you, to supply missing information or correct obvious errors in this Agreement. If we delay or fail to enforce any of our rights under this Agreement, we will still be entitled to enforce those rights at a later time. All notices shall be given in writing by the party sending the notice and shall be effective when mailed by certified or registered mail addressed to the party receiving the notice at its address shown on the front of this Agreement (or to any other address specified by that party in writing) with postage prepaid. You agree and consent that we may serve you for any action or proceeding by registered or certified mail. All of our rights and indemnities will survive the termination of this Agreement. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time prior differential or interest, as applicable, permitted to be charged or collected by applicable law, and any such excess payment will be applied to Rental Payments in inverse order of maturity, and any remaining excess will be refunded to you. In the event that we are leasing the Equipment or any unit thereof from a third party, this Agreement shall be deemed to be a sublease; we shall be deemed to be a sublessor, and you shall be deemed to be a sublessee. If you do not perform any of your obligations under this Agreement, we have the right, but not the obligation to take any action or pay any amounts that we believe are necessary to protect our interests. You agree to reimburse us immediately upon our demand for any such amounts that we pay. If more than one Customer has signed this Agreement, each of you agree that your liability is joint and several. Any restrictive endorsement on any check given us in payment of any amount due hereunder shall be void. You may not prepay this Agreement without our prior written consent. Time is of the essence with respect to your obligations under this Agreement.

LESSEE'S INITIALS _____

## UNCONDITIONAL CONTINUING GUARANTY

When we use the word "undersigned" or "Guarantor" in this Personal Guaranty, we mean the Personal Guarantors indicated below. When we use the words "we", "us" or "our" in this Personal Guaranty, we mean AEL Financial, LLC, the Lessor herein. The undersigned (jointly and severally, if more than one), in consideration of us entering into this Lease Agreement (the "Agreement"), unconditionally and irrevocably guarantees to us and/or our successors and assigns, the prompt payment and performance when due of all of Lessee's obligations to us under this Agreement. Upon default by the Lessee under the Agreement, Guarantor will immediately perform all obligations of the Lessee under the Agreement. We will not be required to proceed against Lessee or the Equipment or enforce any other remedy before proceeding against Guarantor. This is a guaranty of payment and not collection. Notwithstanding any changes, modifications, renewals or extensions of the Agreement, the provisions of this Guaranty shall continue to remain in full force and effect with respect to the Agreement as so changed, modified renewed or extended, whether or not undersigned is notified of such changes, modifications, renewals or extensions, in advance. The undersigned waives any claim, right of remedy which it may now have, or hereafter acquire against us. Guarantor further agree to pay all reasonable attorneys' fees and other costs incurred by us by reason of default by the undersigned or the Lessee. The undersigned waives notice of acceptance hereof and of all other notices or demands of any kind to which Guarantor may be entitled. This is a continuing guaranty and will not be discharged or affected by the death, dissolution, liquidation, insolvency or bankruptcy of the Lessee or the undersigned, will bind the undersigned and the heirs, administrators, representatives, successors and assigns of the undersigned, and may be enforced by or for the benefit of us, or any assignee of, or successor to us. There are no conditions precedent to this Guaranty. The undersigned authorizes us to obtain credit bureau reports regarding undersigned's personal credit and to make any other credit inquiries that we deem necessary. THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS. THE UNDERSIGNED HEREBY CONSENTS TO THE JURISDICTION OF STATE OR FEDERAL COURT LOCATED IN LAKE COUNTY, ILLINOIS. THE UNDERSIGNED EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY.

| PERSONAL GUARANTOR: Joseph R. Richard | PERSONAL GUARANTOR: |
|---|---|
| Print Name of Guarantor | Print Name of Guarantor |
| Guarantor Signature: _____ Date: 6-26-07 | Guarantor Signature: _____ Date: |

EXHIBIT "A"
EQUIPMENT DESCRIPTION

LEASE NUMBER
Page 1 of 1

| VENDOR NAME | INVOICE #* | EQUIPMENT DESCRIPTION | LOCATION |
|---|---|---|---|
| CAPITAL 4, INC. | To Be Determined | 27Ea 3Com 3103 Manager Phone; 1ea 3Com Attendant Console; 13ea 3Com Group 2 Phone Licenses; 2ea Switch 4500G PWR 48 Port; 3ea 3Com 3102 Business Phone; 1ea Baseline Switch 2426 PWR Plus; 2ea NBX V3000 Analog IP Telephone Solution; 1ea NBX T1 Digital Line Card; 1ea NBX V3000 Four Universal Card Slot Expansion Chassis; 2ea APC BX1500 UPS | 1701 Highway 6 South Houston, TX 77077 |

* - copies attached

AEL FINANCIAL, LLC

By: _____
Name: TRAVIS C. BAILEY
Title: PRESIDENT
Date: 7-3-07

J R Richard Enterprises, Inc.

By: _____
Name: Joseph R Richard
Title: President
Date: 6-26-07

## DELIVERY AND ACCEPTANCE RECEIPT

TO: AEL Financial LLC
600 North Buffalo Grove Road
Buffalo Grove, IL 60190

Lease Agreement dated as of June 18, 2007 between AEL Financial, LLC as LESSOR ("Lessor") and J R Richard Enterprises, Inc. as LESSEE ("Lessee").

The undersigned hereby certifies that the Equipment described in the Lease Agreement ("Agreement") which has been delivered as of the date hereof, a list of which is attached hereto as Schedule "A", is in accordance with the terms of said Agreement, has been inspected, installed, is in good working condition, and accepted by the undersigned as satisfactory. The decals, labels, etc., if required and supplied, have been affixed to the Equipment as listed in said Agreement. The undersigned hereby approves payment by Lessor to the Supplier for said Equipment. Notwithstanding that the Lessee may have not received or accepted all of the remaining Equipment described in the Agreement, the Lessee confirms that the Lessor is hereby authorized to pay the Supplier for all of the remaining Equipment to be installed by Supplier (or its designated agent) at a future date(s)

DATE: √ 7/12/07

LESSEE:
J R Richard Enterprises, Inc.

By: √ _____

Name: _____Joseph R. Richard_____

Title: _____President_____

ADDENDUM "A"
TO
LEASE AGREEMENT DATED AS OF June 18, 2007
BETWEEN
AEL FINANCIAL, LLC, AS LESSOR
AND
J R Richard Enterprises, Inc. AS LESSEE

LESSOR and LESSEE hereby agree to modify the Lease Agreement only as follows:

Upon expiration of the initial lease term, and assuming that no default has occurred and is continuing, LESSEE may purchase LESSOR'S interest in the Lease Equipment on an "AS IS", "WHERE IS" BASIS, with no warranties expressed or implied for a sum equal to one dollar ($1.00), plus all applicable taxes. LESSEE must tender payment within ten (10) days subsequent to the end of the initial lease term.

All other terms and conditions of the Lease Agreement remain intact and unchanged.

IN WITNESS WHEREOF, the parties hereto, by their authorized signatories, have executed this Addendum "A" as of √ 6-26-_____, 2007.

Lessor:
AEL FINANCIAL, LLC
By: _____
Name: James C. Bailey
Title: Manager

Lessee:
J R Richard Enterprises, Inc.
By: √ _____
Name: Joseph R. Richard
Title: President

08CV1907        AEE
JUDGE SHADUR
MAGISTRATE JUDGE MASON

# EXHIBIT B

To:   AEL Financial, LLC
      600 North Buffalo Grove Road
      Buffalo Grove, IL 60190

Gentlemen:

I, √ *(F. R. Richard)* (Assistant) Secretary of J R Richard Enterprises, Inc. do hereby certify that Joseph R. Richard is President of said corporation, and as such, was, is, and will continue to be authorized and empowered to execute a Lease between said corporation, and AEL Financial, LLC and all other documents related to said transaction.

IN WITNESS WHEREOF, I have affixed my name as (Assistant) Secretary of said corporation and have caused the corporate seal of the corporation to be affixed hereto this 18th day of June, 2007.

√ _____
(Assistant) Secretary

SEAL